James B. Hardin, CA Bar No. 205071
jhardin@hardintrial.com
HARDIN LAW GROUP, APC
2901 W. Coast Highway, Suite 200
Newport Beach, CA 92663
Telephone: (949) 337-4810
Facsimile: (949) 209-4853

Anna P. Christiansen, UT Bar No. 17518
(pro hac vice motion forthcoming)
anna.christiansen@cjlaw.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472

Attorneys for Plaintiffs James K. and A.K.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| JAMES K. and A.K.,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS OF CALIFORNIA d/b/a ANTHEM BLUE CROSS,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. SECTION 1132(a)(1)(B); AND FOR VIOLATION OF 29 U.S.C. SECTION 1132(a)(3)** |

Plaintiffs James K. and A.K., by and through counsel of record, complain against Defendant and allege, collectively and in the alternative, as follows:

## I. INTRODUCTION

This action arises from Defendant's wrongful denial of claims for mental health treatment provided to A.K., a beneficiary under an employee welfare benefit plan insured and administered by Blue Cross of California d/b/a Anthem Blue Cross ("Anthem"). A.K. received treatment from four facilities and providers between September 2024 and June 2025: Lindner Center of Hope ("Lindner"), Hanbleceya, Trails Momentum ("Trails"), and Dr. Ingrid Boveda.

Anthem processed the Hanbleceya claims incorrectly, paying only a fraction of the billed charges for partial hospitalization services. Anthem acknowledged in writing that the Trails and Dr. Boveda claims would be reprocessed, and then did not reprocess them. Through this suit, Plaintiffs seek the benefits owed to them under the Plan and to address the violations of federal law requiring parity in coverage of mental health services.

## II. PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs are residents of Orange County, California. James K. is A.K.'s parent.

2. This case involves mental health treatment and other confidential medical and mental health information. Using Plaintiffs' full names and surnames would tend to render them identifiable and would intrude upon private health care matters, including matters protected by HIPAA.

3. Through his employment, James K. was a participant in an employer-sponsored group health plan (the "Plan"), with coverage under the Anthem Bronze PPO, Group Number Q72885. A.K. was at all relevant times a beneficiary of the Plan.

4. Defendant Blue Cross of California ("Anthem") is a California corporation doing business as Anthem Blue Cross. Anthem insured the Plan and, at all relevant times, acted as the claims administrator and a fiduciary of the Plan with respect to the claims at issue.

5. The Plan is a fully insured employee welfare benefit plan under 29 U.S.C. § 1001 et seq., the Employee Retirement Income Security Act of 1974 ("ERISA").

6. Plaintiffs seek relief under ERISA and the Plan for benefits due under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B); and alternatively, for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendant's violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"); as well as for prejudgment interest; and for fees and costs pursuant to 29 U.S.C. § 1132(g).

7. Jurisdiction. This Court has jurisdiction over this case pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because Plaintiffs' claims arise under ERISA.

8. Venue. Venue is appropriate in this District under 29 U.S.C. § 1132(e)(2) because the breaches alleged herein took place in this District, where Plaintiffs reside and where the benefits at issue were to be received, and because Anthem may be found in this District. Venue is also appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

9. Divisional Assignment. This action arises in Orange County, where Plaintiffs reside, and should therefore be assigned to the Southern Division.

## III. FACTUAL ALLEGATIONS

### A. Allegations Regarding the Plan

10. Anthem issued an "Evidence of Coverage" for the Anthem Bronze PPO (the "EOC"), dated January 1, 2024, which, upon information and belief, constitutes the governing plan document and/or summary plan description for the Plan.

11. The EOC contains a table setting out "Covered Services" under the Plan, which includes "**Mental Health and Substance Use Disorder (Chemical Dependency) Services (includes behavioral health treatment for autism spectrum disorders)**." (EOC at 31, bold in original).

12. The table does not include a description of "In Network" or "Out-of-Network" distinction for such services, but states as follows: "Mental Health and Substance Use

Disorder Services are covered as required by state and federal law. Please see the rest of this Schedule for the cost shares that apply in each setting." (*Id.*)

13. The EOC states the following with respect to which "Covered Services" are available for "**Mental Health and Substance Use Disorder (Chemical Dependency) Services**":

> Covered Services include the following:
>
> - **Inpatient Services** in a Hospital or any Facility that we must cover per state law. Inpatient benefits include the following:
>   - Inpatient psychiatric hospitalization, including room and board, Drugs, and services of Physicians and other Providers who are licensed health care professionals acting within the scope of their license,
>   - Psychiatric observation for an acute psychiatric crisis,
>   - Detoxification – medical management of withdrawal symptoms, including room and board, Physician services, Drugs, dependency recovery services, education and counseling,
>   - Residential treatment, which is specialized 24-hour treatment in a licensed Residential Treatment Center. It offers individualized and intensive treatment and includes:
>   - Treatment in a crisis residential program:
>     - Observation and assessment by a psychiatrist weekly or more often,
>     - Rehabilitation and therapy.
>
> …

EOC at 94.

14. The Plan's exclusion section contains the following paragraph:

> 68. **Wilderness or other outdoor camps and/or programs.**
>
> This Exclusion does not apply to Medically Necessary treatment of Mental Health and Substance Use Disorder as required by state law.

EOC at 128.

15. The Plan describes the Maximum Allowed Amount for out-of-network services as follows:

> For Covered Services you receive from an Out-of-Network Provider or Other Eligible Provider, other than Emergency Care

> within California, the Maximum Allowed Amount will be based on the applicable Anthem Out-of-Network Provider or Other Eligible Provider rate or fee schedule for your Plan, an amount negotiated by us or a third party vendor which has been agreed to by the Out-of-Network Provider or Other Eligible Provider, an amount based on or derived from the total charges billed by the Out-of-Network Provider or Other Eligible Provider, an amount based on information provided by a third party vendor or an amount based on reimbursement or cost information from the Centers for Medicare & Medicaid Services ("CMS"). When basing the Maximum Allowed Amount upon the level or method of reimbursement used by CMS, Anthem will update such information, which is unadjusted for geographic locality, no less than annually.

EOC at 132.

16. The Plan does not disclose which of these alternative methodologies Anthem applies to any particular claim, and Anthem did not disclose the methodology it applied to any of A.K.'s claims despite Plaintiffs' requests.

**B. A.K.'s Treatment**

17. Prior to the treatment at issue here, A.K. was diagnosed with several serious mental health conditions recognized in the DSM-5, including major depressive disorder, recurrent episode, moderate; generalized anxiety disorder; and body dysmorphic disorder. These conditions required a continuum of intensive behavioral health treatment.

18. A.K. received residential mental health treatment at Lindner from September 25, 2024, through October 28, 2024.

19. A.K. received partial hospitalization treatment at Hanbleceya from October 29, 2024, through January 30, 2025.

20. A.K. received intermediate outdoor behavioral health treatment at Trails from January 31, 2025, through June 25, 2025.

21. A.K. received psychological testing from Dr. Ingrid Boveda on February 28, 2025, March 11, 2025, and March 12, 2025.

/ / /

22. A.K. benefited from the treatment provided by each of these facilities and providers. Claims for A.K.'s treatment were submitted to Anthem for payment under the Plan.

**C. Hanbleceya**

23. Hanbleceya provided partial hospitalization services to A.K. and billed those services using code H0035, which describes mental health partial hospitalization treatment of less than 24 hours.

24. Anthem processed the Hanbleceya claims at an allowed amount of $600 per day, which was only approximately 17.1% of the billed charges.

25. In a June 9, 2025 letter, Plaintiffs filed a Level One Member Appeal of Anthem's processing of the Hanbleceya claims.

26. Plaintiffs quoted the Plan's provision regarding calculation of allowed amounts and pointed out that Anthem had not provided any information about how Anthem had determined the amount it would pay.

27. Plaintiffs observed that it did not seem that Anthem could have used CMS information because CMS did not report rates for residential mental health treatment for young adults.

28. Plaintiffs observed that "To my knowledge, because these are covered, authorized, and medically necessary services, and because the BlueCross BlueShield Association has historically allowed for these residential services at much higher rates, my claims should have been paid at 100%."

29. Plaintiffs reminded Anthem of its duties to provide information and a full and fair review.

30. Finally, Plaintiffs observed that the MHPAEA required parity between coverage for mental health and medical services. Plaintiffs expressed concern that Anthem could be calculating allowed amounts for intermediate mental health services at lower rates than it did for intermediate medical/surgical services.

/ / /

31. In relation to that concern, Plaintiffs requested that Anthem conduct a parity analysis, as well as documentation related to how Anthem was calculating allowed amounts for intermediate services for both mental health and medical.

32. Anthem denied the first Level One appeal in a letter dated November 26, 2025.

33. That letter stated that Anthem was not upholding the appeal because the claim was purportedly "processed correctly based on your approved authorizations under UM72209165 and UM69081551 and your Anthem Bronze PPO 70/6600/35% (9B1W) plan benefits for Out-of-Network office and outpatient mental health services. Please refer to your EOB for your cost share."

34. In a letter dated January 20, 2026, Plaintiffs filed a second Level One Member Appeal.

35. In that letter, Plaintiffs observed that Anthem had mischaracterized the services A.K. received at Hanbleceya as "office and outpatient mental health services" when in reality they were inpatient, residential services.

36. Plaintiffs further pointed out that under the schedule of benefits, the Plan covered a minimum of $650 a day for such services.

37. Plaintiffs finally renewed their requests for documentation regarding the facts Anthem relied upon to make its decision and its processes in doing so, as required by ERISA.

38. In a letter dated February 22, 2026, Anthem denied the second Level One Appeal, stating in relevant part:

> After careful review of your grievance, Anthem has determined the claim IDs …were correctly processed based on the coding submitted by the provider and applied to the plans applicable benefits. Please be advised, the coding used on the facility claims is CPT H0035 – MENTAL HEALTH PARTIAL HOSPITALIZATION, TREATMENT, LESS THAN ** EXCEPTION and is not listed as residential treatment center or inpatient services.

39. Anthem's letter did not identify the Plan provision, fee schedule, or methodology under which Anthem calculated the $600 per day allowed amount, nor did it explain how that amount was derived from any of the methodologies described in the Plan's Maximum Allowed Amount provision.

40. In a July 16, 2026 letter entitled "Final Letter," Plaintiffs again requested that Anthem explain its methodology or pay the full amount. Anthem did neither.

41. As a result of Anthem's incorrect processing, Plaintiffs paid or remain liable for approximately $13,700 for A.K.'s treatment at Hanbleceya that should have been paid under the Plan.

**D. Lindner**

42. Lindner provided residential mental health treatment to A.K. from September 25, 2024, through October 28, 2024.

43. In an Explanation of Benefits ("EOB") dated December 13, 2024, Anthem processed the Lindner claims, paying $445.00 per day, or approximately 24% of the billed charges.

44. Plaintiffs submitted a Level One Member Appeal dated June 3, 2025. Among other things, Plaintiffs:

a. Objected that Anthem had allowed the claims at $445.00 per day, or 24% of the billed charges;

b. Pointed out that the Plan's Maximum Allowed Amount provision lists several alternative methodologies and does not disclose which was applied;

c. Requested the procedures, formulas, methodologies, or schedules used to calculate the allowed amount for each claim; and

d. Expressed concern that Anthem was applying an impermissible nonquantitative treatment limitation ("NQTL") involving plan methods for determining usual, customary, and reasonable charges, and requested a comparative parity analysis.

45. Anthem issued a refund check to Plaintiffs in the amount of $3,157.15 relating to the Lindner claims.

46. In doing so, Anthem still did not explain what method it used and underpaid under the Plan.

**E. Trails and Dr. Boveda**

47. Plaintiffs submitted claims for A.K.'s treatment at Trails through Anthem's member portal on August 1, 2025. The Trails claims total $104,309.

48. Trails billed its services using revenue code 1006, which the National Uniform Billing Committee established for intermediate outdoor behavioral health programs and which has been in active use since July 2017.

49. Plaintiffs followed up with Anthem through the member portal on October 15, 2025, and October 16, 2025, and were told the claims were being reviewed.

50. On November 16, 2025, Anthem informed Plaintiffs through the portal that the claims needed to be resubmitted with procedure codes or CPT codes.

51. The claims for Dr. Boveda's psychological testing total $6,783.39. In an EOB dated June 23, 2025, Anthem stated with respect to those claims:

> 015: The amount shown here is more than your plan allows for this care. If this was not an emergency, the doctor/facility might bill you for the difference between what your plan allowed and what the doctor/facility charged.

52. Anthem allowed $0.00 for several of Dr. Boveda's charges and applied the allowed amounts for the remaining charges entirely to Plaintiffs' deductible.

53. In a letter dated December 11, 2025, Plaintiffs submitted a Level One Member Appeal of the Trails and Dr. Boveda claims. Among other things, Plaintiffs:

a. Requested a full and fair review that took into account all information submitted, without regard to whether it was considered in the initial determination;

/ / /

/ / /

b. Requested that the response set forth the specific reasons for the determination, the specific Plan provisions on which it was based, and a description of any additional material needed to perfect the claim;

c. Pointed out that the Plan covers psychological and neuropsychological testing and requested the documentation used to calculate the maximum allowed amount for Dr. Boveda's claims, noting that Anthem inconsistently denied some charges and applied others to the deductible;

d. Explained that the Trails claims were properly billed using revenue code 1006, a valid code in use for nearly a decade, and that Anthem's refusal to recognize that code was improper;

e. Expressed concern that Anthem was imposing an as-applied facility-type NQTL on intermediate behavioral health claims that is not applied to analogous intermediate medical/surgical services such as skilled nursing, subacute rehabilitation, inpatient habilitative, and inpatient hospice services; and

f. Requested a comparative parity analysis and the documentation supporting it.

54. Anthem acknowledged receipt of the appeal and represented that the claims would be reprocessed. In a letter dated January 15, 2026, Anthem stated:

> After a careful review of your grievance, we find that your claims for services rendered from January 31, 2025, through June 25, 2025, by Boveda, Ingrid and Trails Academy LLC., have not been processed correctly and for this we apologize. As a result, your claims will be forwarded to our claims department for reprocessing. Once the claims have been reprocessed, you will receive the revised Explanation of Benefits (EOB's) under a separate cover shortly.

55. Despite this representation, Anthem has not reprocessed the Trails or Dr. Boveda claims. As of the date of this Complaint, Plaintiffs have received no correspondence, payment, or EOB reflecting any reprocessing.

56. In a letter dated July 13, 2026, Plaintiffs again asked Anthem to reprocess the Trails claims as stated in its January 15, 2026 letter, pointed out that Plan Exclusion 68 expressly does not apply to medically necessary treatment of mental health and substance use disorders, submitted A.K.'s Trails medical records, and asked Anthem to verify that all claims were on file.

57. As of the filing of this Complaint, Anthem has not reprocessed or paid the claims for A.K.'s treatment from Trails or Dr. Boveda.

58. Anthem's failure to decide Plaintiffs' appeal and to reprocess the claims within the timeframes required by 29 C.F.R. § 2560.503-1(i) means that Plaintiffs are deemed to have exhausted the administrative remedies available under the Plan. 29 C.F.R. § 2560.503-1(l)(1).

59. As a result of Anthem's failure to pay any benefit for Plaintiffs' claims for Trails or Dr. Boveda, Plaintiffs have incurred over $110,000 in charges.

**F. Exhaustion and Damages**

60. Plaintiffs exhausted all internal appeal rights and administrative remedies available under the Plan, or are deemed to have done so, with respect to each claim at issue.

61. Defendant's actions caused Plaintiffs to pay or become liable for substantial amounts for A.K.'s treatment that should have been paid under the Plan.

62. After exhausting their administrative remedies, litigation was Plaintiffs' only option to enforce their rights to benefits owed under the Plan and seek reimbursement of expenses under the terms of the Plan (as written or as reformed or required by MHPAEA), under the MHPAEA amendments to ERISA.

63. Plaintiffs thereafter retained undersigned counsel to pursue their rights and remedies.

64. Plaintiffs do not seek double recovery.

/ / /

/ / /

/ / /

## IV. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B) – Against Anthem)**

65. All allegations of this Complaint are incorporated by reference as if set forth herein.

66. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

67. Anthem and the Plan failed to pay benefits due for A.K.'s treatment in violation of the terms of the Plan, including by (a) incorrectly processing the Hanbleceya claims at an undisclosed per diem amount not authorized by the Plan; (b) underpaying the Lindner claims using an undisclosed methodology; (c) failing to reprocess and pay the Trails claims after representing that it would do so; and (d) failing to reprocess and pay the Dr. Boveda claims after representing that it would do so.

68. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring administrators to provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

69. Anthem breached its fiduciary duties to Plaintiffs when it failed to comply with its obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in A.K.'s interests and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of A.K.'s claims.

70. The actions of Anthem and the Plan in failing to properly pay for A.K.'s treatment are a violation of the terms of the Plan, as written, and/or as reformed as required or permitted under ERISA.

/ / /

**SECOND CAUSE OF ACTION**

**(Violation of the Mental Health Parity and Addiction Equity Act – 29 U.S.C. § 1132(a)(3) – Against Anthem)**

71. All allegations of this Complaint are incorporated by reference as if set forth herein.

72. The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of Anthem's and the Plan's fiduciary duties.

73. Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

74. The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

75. Impermissible NQTLs under the MHPAEA include, but are not limited to, plan methods for determining usual, customary, and reasonable charges, and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

76. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits at issue for A.K.'s treatment include subacute intermediate inpatient treatment settings such as skilled nursing facilities, rehabilitation facilities, habilitative facilities, and hospice facilities.

77. Upon information and belief, Anthem calculates allowed amounts for intermediate mental health services, including the services provided by Lindner and

Hanbleceya, using methods that are more restrictive than, and applied more stringently than, those used for analogous medical/surgical services.

78. Upon information and belief, Anthem also applies an as-applied facility-type NQTL to intermediate outdoor behavioral health claims, including by refusing to process claims billed with revenue code 1006, that it does not apply to analogous intermediate medical/surgical claims.

79. Upon information and belief, Defendant's handling of A.K.'s claims violated the MHPAEA in application or effect. Because Defendant declined to produce the documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

80. Defendant is in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

81. Plaintiffs expressly requested that Anthem perform an MHPAEA analysis. Anthem failed or declined to do so.

82. The MHPAEA violations by Defendant are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3), including, but not limited to:

a. A declaration that the actions of Defendant violate the MHPAEA;

b. An injunction ordering Defendant to cease violating the MHPAEA and requiring compliance with the statute;

c. An Order requiring the reformation of the terms of the Plan and the criteria used by Defendant to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

d. An Order requiring disgorgement of funds obtained or retained by Defendant as a result of its violations of the MHPAEA;

e. An Order requiring an accounting by Defendant of the funds wrongly withheld from participants and beneficiaries of the Plan as a result of Defendant's violations of the MHPAEA;

f. An Order based on the equitable remedy of surcharge requiring Defendant to provide payment to Plaintiffs as make-whole relief for their loss;

g. An Order equitably estopping Defendant from denying Plaintiffs' claims in violation of the MHPAEA; and

h. An Order providing restitution from Defendant to Plaintiffs for their loss arising out of Defendant's violations of the MHPAEA and unjust enrichment.

83. In addition, Plaintiffs are entitled to an award of prejudgment interest and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

## V. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs seek relief as follows:

1. Judgment against Anthem in the total amount owed for A.K.'s treatment at Hanbleceya, Lindner, Trails, and with Dr. Boveda under the terms of the Plan;
2. Pre- and post-judgment interest to the date of payment;
3. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;
4. Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and
5. For such further relief as the Court deems just and proper.

Dated: November 24, 2026 **HARDIN LAW GROUP, APC**

By: *<u>/s/ James B. Hardin</u>*
James B. Hardin
*Attorney for Plaintiffs*